Steve W. Berman
Thomas E. Loeser (SB #202724)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com

Peter B. Fredman (SB #189097)
LAW OFFICE OF PETER FREDMAN
125 University Avenue, Suite 102
Berkeley, CA 94710
Telephone: (510) 868-2626
Facsimile: (510) 868-2627
peter@peterfredmanlaw.com

Attorneys for Plaintiff HUGO ZALDANA,
individually, and on behalf of all others similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUGO ZALDANA, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KB HOME, a Delaware corporation; FIRST AMERICAN TITLE COMPANY, a California corporation; FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation; FIRST AMERICAN CORPORATION, a Delaware corporation; COUNTRYWIDE FINANCIAL CORPORATION, a Delaware Corporation, COUNTRYWIDE HOME LOANS, a Delaware corporation; COUNTRYWIDE MORTGAGE VENTURES, L.L.C.; COUNTRYWIDE KB HOME LOANS, an unincorporated association of unknown form;<br>                                    Defendants. | No. 08-cv-3399 MMC<br><br>**CLASS ACTION**<br><br>**JOINT FURTHER CASE MANAGEMENT STATEMENT**<br><br>Date: July 9, 2010<br>Time: 10:30 a.m.<br>Place: Courtroom 7<br>Hon. Maxine M. Chesney |

The separately represented parties to the above-entitled action are:

(1) Plaintiff Hugo Zaldana, for himself and the putative class,

(2) Defendant KB Home,

(3) Defendants Countrywide Financial Corp., Countrywide Home Loans, Inc., Countrywide Mortgage Ventures, L.L.C. and Countrywide KB Home Loans (collectively "Countrywide"), and

(4) Defendants First American Corporation, First American Title Insurance Company, and First American Title Company (collectively "First American").

Having met and conferred on these matters, the parties hereby submit the following Joint Case Management Conference Statement:

## SUMMARY STATEMENT BY PLAINTIFFS

All parties have now answered Plaintiff's Fourth Amended Complaint.  It alleges two sets of RESPA claims arising out of Plaintiff's single transaction: the "sham-ABA" claims against Countrywide and KB Home; and the "kickback/required-use" claims against First American and KB Home.  The claims are further detailed below.

Both sets of claims allege the use of sham investment transactions to pay KB Home for its referral of settlement services, in a manner similar to the facts alleged in *Edwards v. First American Corp.,* 517 F.Supp.2d 1199, 1205 (C.D.Cal. 2007).  There, First American's alleged overpayment for a minority interest in title agency was the "thing of value" exchanged for an exclusive referral arrangement, thus stating a RESPA anti-kickback claim.  *See also Edwards v. First American Corp.,* --- F.3d ----, 2010 WL 2471900, C.A.9 (Cal.), 2010. (June 21, 2010) (finding Plaintiff had Article III standing to pursue RESPA anti-kickback claim) and *Edwards v. First American Corp.,* Unpublished Memorandum Disposition, C.A.9, June 21, 2010, Case Nos. 08-56536, 08-56538 (reversing district court's denial of class certification) (**courtesy copy attached as Exhibit A**).  Both investment transactions originated from essentially the same KB Home department and personnel.

The First American side of this case (hereafter, the "*Zaldana case*") is being driven largely by events in the related case, *Bates v KB Home*, now pending before Judge Steven A. Brick in Alameda County Superior Court.  *Bates* is tightly scheduled for hearing on motions for summary

judgment on December 16, 2010[1] and trial on February 14, 2011. First American is not a defendant in *Bates*, but *Bates* involves the same set of dealings between KB Home and First American that will establish the violations alleged in the *Zaldana* case.

After it became apparent from this Court's rulings that First American would be a defendant in the *Zaldana* case, KB Home took the position that it was entitled to certain accommodations aimed at protecting its personnel from duplicative depositions relating to First American issues. To that end, the parties agreed that depositions in *Bates* shall be attended by all *Zaldana* parties, admissible in *Zaldana* (subject to evidentiary rules), and delayed until August-September while First American and KB Home engage in document production. It is anticipated that any settlement in *Bates* would likely resolve the "kickback/required-use" claims against KB Home in *Zaldana* (or vice-versa) and that First American will be involved in any such settlement discussions. No serious settlement discussions are anticipated, however, until the motion for summary judgment in *Bates* is heard.

Meanwhile, document discovery, including extensive meet and confer activity, continues with respect to the "sham-ABA" case against Countrywide and KB Home. No depositions are currently scheduled with respect to that aspect of the case and, given the activity in *Bates*, none are anticipated before November at the earliest.

As progress in the *Bates* case presents the strong potential to narrow the issues in *Zaldana*, Plaintiff submits that these events should be allowed to further run their course before establishing a definitive schedule for class certification in *Zaldana*. Plaintiffs would target a hearing date on class certification for June/July of 2011 with a trial date the following winter.

Finally, Plaintiff opposes Defendants' endeavor (described below) to sever the "sham-ABA" claims from the "kickback/required-use" claims at this time. Despite these different aspects, this is a single case about KB Home's referral practices. The claims all arise from the same singular transaction—Plaintiff's purchase of the subject property from KB Home—involving a

---

[1] This date is likely to be advanced approximately one month because it conflicts with the mandatory settlement conference scheduled for December 14, 2010. The parties are to work out a final briefing schedule in Bates in advance of the status conference scheduled in that case for July 26, 2010.

JOINT FURTHER CASE MANAGEMENT STATEMENT        - 2 -
NO. 08-cv-3399 MMC

1  single set of transactional documents and witnesses.  Moreover, not coincidentally, the referral

2  arrangements underlying all these claims originated from the same KB Home Financial Services

3  department and personnel.  Thus, severing the claims for trial will have the affect of turning one

4  lengthy trial into two lengthy trials with duplicative witnesses and facts as well as law.

## SUMMARY STATEMENT BY DEFENDANTS

6   Plaintiff Hugo Zaldana ("Plaintiff") is attempting to bring two separate cases in one.  First,

7  he has sued the Countrywide Defendants and KB Home alleging that a KB Home-Countrywide

8  mortgage joint venture, which lent him the money to purchase a KB Home residence, was a "sham

9  affiliated business arrangement" ("Sham ABA") under RESPA.  Second, Plaintiff asserts that in his

10 late 2007 home purchase, KB Home forced him to use First American Title Company as the title

11 insurer in the transaction, and that it did so because in 2001 First American Title Company's parent

12 company, the First American Corporation, made an investment in Home Safe Escrow Company, a

13 KB Home affiliate.

14   As a threshold matter, Defendants contend that Plaintiff has improperly joined two cases

15 that are separate and distinct, resulting in the likelihood of prejudice, confusion, unnecessary

16 burden and expense.  Defendants anticipate seeking to sever the two cases via a motion to be made

17 in the near future, and request a hearing date for that motion for severance.

18   The Countrywide Defendants and KB Home contend that the "Countrywide /Sham ABA"

19 case fails on the merits because the business arrangements between Countrywide and KB Home all

20 were legitimate and permissible under RESPA, and that Plaintiff cannot make the showing required

21 to demonstrate a "Sham ABA."  Additionally, the Countrywide Defendants and KB Home will

22 show that Zaldana's claims against them are barred by the documents he signed and that Plaintiff

23 has no standing to assert a RESPA claim.  The Countrywide Defendants and KB Home further will

24 demonstrate that Plaintiff's claims against them are inappropriate for class treatment because

25 individual issues predominate; Plaintiff is not a typical or adequate class representative; and

26 individualized resolution is superior to class action treatment.

27  As to the "forced use/kickback" case, KB Home and the First American Defendants assert

28 that Plaintiff has no standing; his claims against the First American Defendants are barred by the

JOINT FURTHER CASE MANAGEMENT STATEMENT       - 3 -
NO. 08-cv-3399 MMC

one-year RESPA statute of limitations and *res judicata;* the documents signed by Plaintiff bar his claims; and there is no nexus between transactions occurring nearly a decade ago and Plaintiff's election to obtain title insurance from First American Title Company when he purchased a home from KB Home in late 2007.  KB Home and the First American Defendants further will demonstrate that Plaintiff's claims against them are inappropriate for class treatment because individual issues predominate; Plaintiff is not a typical or adequate class representative; and individualized resolution is superior to class action treatment.

Defendants propose that this matter should be set for a further case management conference on the date set for the hearing on Defendants' motion for severance.

## I. JURISDICTION AND SERVICE

**Plaintiff's Position:**

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 12 U.S.C. § 2614. No issues exist regarding personal service or venue. The Complaint does not contain any Doe defendant allegations, and no named parties remain to be served.  Plaintiff anticipates that he may need to seek amendment to name additional representative plaintiffs and/or defendant party subsidiary/parent entities as may be necessary in response to "wrong entity" defenses.

**Defendants' Position:** [2]

Defendants state that any amendment must comply with Rule 15 of the Federal Rules of Civil Procedure, and they reserve their right to oppose any attempted amendment, noting that Plaintiff already has amended his Complaint four times.

## II. FACTS

**Plaintiff's Position**:

KB Home is one of the largest real estate developers and builders in the United States and is, therefore, in a position to refer lucrative real estate settlement service business to third-party real estate settlement service providers.  This case arises out of KB Home's alleged practice of

---

[2] Local Rule 16-10(d) requires that the parties file a subsequent Joint Case Management Statement, the purpose of which is to report "progress and changes since the last statement was filed and mak[e] proposals for the remainder of the case development progress." Accordingly, to avoid burdening the Court with superfluous materials, unless set forth herein, Defendants refer to their positions set forth in the Joint Case Management Statement filed on June 5, 2009 (Docket No. 63).

JOINT FURTHER CASE MANAGEMENT STATEMENT        - 4 -
NO. 08-cv-3399 MMC

collecting kickbacks and referral fees from such third-party providers for referrals in violation of the Real Estate Settlement Procedures Act ("RESPA").

### *The Countrywide-KB "Sham ABA" Case*

Plaintiff alleges that KB Home referred him and persons similarly situated to Countrywide for mortgage brokerage and origination services in exchange for, among other things, a share of the fee and securitization profits resulting from the referral. It is not disputed that KB Home referred Plaintiff and members of the proposed class to Countrywide Home Loans, which brokered their loans to an entity called Countrywide KB Home Loans and/or successor entities ("Countrywide-KB") and that the resulting profits were split between KB Home and Countrywide. Defendants contend that Countrywide-KB was a legitimate joint venture which legally shared its profits based on the affiliated business arrangement ("ABA") safe harbor in RESPA. Plaintiff contends that the arrangement was a "Sham ABA" within the meaning of RESPA and its implementing regulations because the joint venture was essentially indistinguishable from Countrywide, and KB Home's sole role was to deliver the referrals and collect the resulting profits due to it under the arrangement. If Countrywide-KB was a Sham ABA, as Plaintiff contends, then Defendants are liable for violations of the anti-referral fee provisions of RESPA (12 U.S.C. §2607).

### *The KB Home-Homesafe-First American Title "Required Use/Kickback" Case*

Plaintiff alleges that KB Home compulsorily referred him and proposed Class members to First American for title insurance services: (1) by requiring all earnest money deposits to be paid to a wholly-owned KB Home subsidiary called "HomeSafe," which in turn ordered title insurance on each KB Home property from First American; and (2) by requiring customers to execute purchase agreements and escrow instructions in which First American was pre-selected as the title insurance provider. The arrangement was based on a 2001 agreement between KB Home and First American, whereby the latter agreed to a multi-million dollar up-front payment to KB Home for a required use referral relationship facilitated through a jointly owned entity called "Homesafe". The transaction was disguised through First American's overpayment for the purchase of an interest in Homesafe, in a manner similar to *Edwards v First America, supra.*

1  Plaintiff was required to use First American for title insurance pursuant to the
2  aforementioned arrangement in violation of the RESPA provision which prohibits a seller (here,
3  KB Home) from requiring the use of a specific title insurer (here, First American).  12 U.S.C.
4  §2608.  The required use constituted a referral under RESPA, and KB Home made (and First
5  American received) the referral of Plaintiff's title insurance business in consideration of lump sum
6  payment it received from First American in violation of the provision of RESPA that prohibits such
7  kickback arrangements. 12 U.S.C. § 2607.

**Defendants' Position**:

*Defendants' Position Regarding Plaintiff's Countrywide-KB "Sham ABA" Case*:

The evidence offered to the Court will show that Countrywide-KB operates as a legitimate entity that performs actual and valuable services in loan transactions.  Countrywide-KB complies with each of the statutory requirements in RESPA's Section 8(c)(4) safe harbor and satisfies the criteria HUD set forth in its 1996-2 Policy Statement to determine whether an entity is a *bona fide* settlement service provider.  In Section 8(c)(4), RESPA provides that an ABA does not violate Section 8(a) or Section 8(b) of the Act as long as three requirements are met.  12 U.S.C. § 2607(c)(4).  These requirements pertain to (1) disclosure, (2) required use, and (3) returns on ownership interest.  Countrywide-KB satisfies all three conditions.

HUD has stated that, in addition to satisfying the statutory criteria, an affiliated entity must be a *bona fide* provider of settlement services.  HUD's 1996-2 Policy Statement sets forth a number of factors that HUD will consider when determining whether an affiliated entity is a *bona fide* provider of settlement services that may qualify for the Section 8(c)(4) exception.  The factors include consideration of the ABA's capitalization, how the ABA is managed, whether the ABA has its own employees, whether the ABA provides substantial services, and whether it leases its own office space.  HUD considers these factors together and weighs them in light of the facts and circumstances of a particular situation; a response to any one of the considerations by itself is not determinative of whether an entity will qualify for the Section 8(c)(4) exception.  Here, the evidence will show that Countrywide-KB squarely satisfies HUD's criteria and is a *bona fide* settlement service provider.

Countrywide Financial Corporation and Countrywide Mortgage Ventures LLC, although named as defendants, were not involved in Plaintiff's transaction or the operations of CKB. They are not proper parties to this lawsuit.

### *KB Home's and First American Defendants' Position Regarding the "KB Home-Homesafe-First American" "Required Use" Case*:

There is no evidence that KB Home required Plaintiff to use First American Title Company for title insurance services. The agreements and disclosures signed by Plaintiff bar such a claim. Plaintiff's allegations, do not constitute admissible evidence regarding Plaintiff's transaction. KB Home also denies that there was any referral arrangement from KB Home to First American Title Company for title insurance services or that KB Home acted to conceal any such arrangement. There is no factual basis for Plaintiff's allegation that The First American Corporation's 2001 purchase of Homesafe Escrow Company Stock caused KB Home to refer Plaintiff to First American Title Company in late 2008. Additionally, Plaintiff has no standing to pursue these claims.

The First American Defendants also assert that Plaintiff's claims are barred by the one-year RESPA statute of limitations, and *res judicata*.

### III.   LEGAL ISSUES

**Plaintiff's Position**:

Plaintiff respectfully suggests that legal issues include, but are not limited to:

1. Whether a class of individuals who purchased their residences in California from KB Home or its affiliates and whose settlement service business incident to such purchases was referred by KB Home to Countrywide or First American should be certified and whether Plaintiff adequately represents that class;

2. whether the referrals and payments made pursuant to the Countrywide-KB joint venture agreement violated RESPA because Countrywide-KB was a Sham ABA;

3. whether First American's payment to KB Home in exchange for minority interest in Homesafe was "thing of value" paid for the referral of settlement services;

JOINT FURTHER CASE MANAGEMENT STATEMENT       - 7 -
NO. 08-cv-3399 MMC

1    4. whether KB Home had a policy of requiring its California customers to use First
2    American for title insurance services; and
3    5. whether individuals who paid settlement service fees to Defendants are entitled to
4    damages under RESPA, including treble damages and attorney's fees and costs.
5    Plaintiff's class definition and statement of legal issues are based on an initial case
6    investigation and are subject to modification based on such evidence and discovery as is produced
7    in this case.

**Defendants' Position:**

Additional legal issues include:

- Whether any fee violating RESPA was paid or received in Plaintiff's individual loan transaction;

- Whether Countrywide-KB is a legitimate provider of settlement services based on a balancing of HUD's 10-factor test and whether Countrywide-KB otherwise qualifies for RESPA's safe harbor provision in Section 8(c)(4);

- Whether the sale of Plaintiff's loan by Countrywide-KB was a secondary market transaction exempt from RESPA;

- Whether KB Home required Plaintiff to use First American for title insurance services for his purchase transaction;

- Whether Plaintiff's signed agreements and disclosures bar the claims in the Fourth Amended Complaint;

- Whether the one-year RESPA statute of limitations bars Plaintiff's claims;

- Whether *res judicata* precludes Plaintiff's claims against the First American Defendants; and

- Whether Plaintiff has standing to bring a RESPA claim.

### IV.   MOTIONS

No motions are pending.  Defendants anticipate moving to sever the "Sham ABA" case from the "required use" case.  The parties anticipate motions for summary judgment and, if appropriate, class certification, as well as potential discovery motions.

///

///

### V. AMENDMENT OF PLEADINGS

**Plaintiff's Position:**

Plaintiff does not currently anticipate any substantial amendment to the pleadings. However, discovery, class certification briefing and/or an order thereon, may present the need to add or substitute class representatives or otherwise amend. Plaintiff respectfully requests that any deadline for amendment of the pleadings be set at such a time that significant discovery and class certification briefing can be completed.

**Defendants' Position:**

In light of the repeated amendments to the case that have already occurred, defendants object to any amendments to the pleadings that unnecessarily delay the ultimate resolution of this case and/or otherwise do not satisfy Fed. R. Civ. P. 15.

### VI. EVIDENCE PRESERVATION

**Plaintiff's Position:**

Plaintiff Zaldana has been instructed to maintain all documents, currently in his possession, that are relevant to this litigation.

**Defendants' Position:**

Defendants have implemented litigation holds, including on ESI, in order to preserve documents relevant to this litigation.

### VII. DISCLOSURES

Plaintiff served his initial disclosures on June 5, 2009.

Defendant KB Home served its initial disclosures on June 5, 2009.

The Countrywide Defendants served their initial disclosures on June 5, 2009.

The First American Defendants served their initial disclosures on July 2, 2010.

### VIII. DISCOVERY PLAN

**Plaintiff's Position:**

Discovery is proceeding. See Plaintiffs summary statement above.

**Defendants' Position:**

JOINT FURTHER CASE MANAGEMENT STATEMENT - 9 -
NO. 08-cv-3399 MMC

1   Defendants anticipate serving interrogatories upon Plaintiff regarding the allegations in his Fourth Amended Complaint; serving requests for production of documents upon Plaintiff; and deposing Plaintiff in late summer or early fall after receiving Plaintiff's documents.

### IX.   CLASS ACTION - L.R. 16-9(B) REQUIREMENTS

**Plaintiff's Position:**

1.   Plaintiff brings this action as a class action under Rules 23(a), 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure for relief from violations of RESPA

2.   The class consists of: individuals who purchased homes in California from KB Home and whose settlement services in connection with such purchases were referred to: (1) Countrywide-KB, Countrywide Home and other Countrywide Financial affiliates; and/or (2) First American for title insurance.

3.   Defendants' actions have harmed and continue to harm the interests of thousands of homebuyers in California. The members of the class are so numerous that joinder of all members is impracticable. Defendants' relationships with the members of the class have been substantially uniform. Questions of law and fact will predominately be common to the class. Plaintiff has no conflicts of interest with other members of the class and has retained counsel competent and experienced in complex class action litigation. Plaintiff and his counsel will fairly and adequately represent the interests of the class. This action is superior to any other method for the fair and efficient adjudication of this legal dispute, as joinder of all members of the class is not only impracticable, but impossible. The damages suffered by certain members of the class are small in relation to the expense and burden of individual litigation and therefore it is highly impractical for such class members to attempt redress individually. Because Defendants deny that they designed and implemented Countrywide-KB to facilitate the illegal payment of referral fees and the illegal referral of settlement services, and KB Home denies that it requires the use of First American for title insurance in its home sale transactions, a class action is not only superior but necessary to ensure that all class members receive the damages to which they are entitled by law. There will be no extraordinary difficulty in the management of this class action. Common questions of law and

1 fact exist with respect to all class members and predominate over any questions solely affecting
2 individual members.

3     4. See scheduling section below, and Plaintiff's Summary Statement above.

4 **Defendants' Position:**

5 This case is not appropriate for class certification. Plaintiff's transaction was unique, and
6 involved individualized facts about what Plaintiff read, signed and understood. Plaintiff is neither
7 an adequate nor a typical purchaser of a KB Home residence. Individual issues regarding each
8 putative class member's transactions predominate, and class treatment is inferior to individual
9 resolution of the claims of those who actually feel aggrieved by their home purchase from KB
10 Home.

11 Given the fact that the Countrywide-related claims and the First American-related claims
12 should be the subject of separate proceedings, it is premature to determine whether a summary
13 judgment motion or class certification should proceed first. Defendants believe that issue should
14 await resolution of their motions to sever, because the issue may justify different treatment in the
15 two different cases Plaintiff has joined in this action.

16     **X. RELATED CASES**

17 **Plaintiff's Position:**

18 There is a related case, *Bates v. KB Home*, pending in the Alameda County Superior Court
19 (Judge Steven Brick). It was certified as a class action on December 29, 2009. The complaint
20 alleges that KB Home requires the use of a captive affiliate, "HomeSafe," for escrow services in
21 connection with the sale of KB Home properties in California, in violation of Cal Civ. Code,
22 Section 2995. The factual underpinnings of the *Bates* case overlap substantially with Plaintiff's
23 required use/kickback claims against KB Home and First American in this case.

24 **Defendants' Position:**

25 Defendants agree that there are overlapping factual issues in these cases, and have
26 coordinated discovery between the two actions.

27 ///
28 ///

## XI. RELIEF

**Plaintiff's Position:**

Plaintiff seeks statutory damages under RESPA of three times the settlement service fees involved in Defendants' violations of RESPA as well as pre-judgment interest, reasonable attorneys' fees, expert witness fees and other costs, and any other further relief as the Court deems just and proper. Plaintiff's calculation of damages is in part dependent on information to be obtained from discovery during the course of this action. Therefore, Plaintiff has not yet computed damages claimed in this action.

**Defendants' Position:**

Defendants deny that Plaintiff or any of the putative class members are entitled to any relief. If liability were established for RESPA violations in Plaintiff's transaction, damages are calculated per statute. Calculation of such damages on a class-wide basis poses significant problems, and weighs against class certification.

## XII. SETTLEMENT AND ADR

The parties are communicating well but have not engaged in any formal Alternative Dispute Resolution efforts or settlement talks. Based on their discussions, the parties do not currently believe that such efforts are likely to be effective until after motions for class certification and/or summary judgment.

## XIII. MAGISTRATE JUDGE

The parties are not willing to submit this matter to a magistrate judge for all purposes.

## XIV. OTHER REFERENCES

The parties do not believe at this time that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XV. NARROWING OF ISSUES

The parties are not presently in a position to address whether: (a) it is feasible or desirable to bifurcate issues for trial; or (b) it is possible to reduce the length of the trial by stipulation, use of summaries or other expedited means of presenting issues. The parties will agree, however, to meet

1  and confer on narrowing the contested issues in this case if it is ultimately determined that a trial is
2  necessary.

### XVI. EXPEDITED SCHEDULE

4  The parties do not believe this is the type of case that can be handled on an expedited basis
5  with streamlined procedures.

### XVII. SCHEDULING

**Plaintiff's Position:**

Plaintiff submits that the entry of a definitive scheduling order should be delayed pending resolution of *Bates*, which is scheduled for trial February 14, 2011.

**Defendants' Position:**

Defendants submit that no scheduling order should be entered until after resolution of Defendants' anticipated motion to sever.

### XVIII. TRIAL

**Plaintiff's Position:**

Plaintiff anticipates that the trial of this action will take 10 court days.

**Defendants' Position:**

Defendants submit that until the severance motion is resolved, it is not possible to accurately forecast the length of trial.

### XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Other than the named parties, there is no other interest to report at this time.

### XX. SUCH OTHER MATTERS AS MAY FACILITATE THE JUST, SPEEDY AND INEXPENSIVE DISPOSITION OF THIS MATTER.

None at this time.

///

///

///

///

| | | |
|---|---|---|
| 1 | DATED: July 2, 2010 | LAW OFFICE OF PETER B. FREDMAN |
| 2 | | |
| 3 | | By: /S/ Peter Fredman<br>    Peter B. Fredman |
| 4 | | Steve W. Berman<br>Thomas E. Loeser |
| 5 | | HAGENS BERMAN SOBOL SHAPIRO LLP |
| 6 | | Attorneys for Plaintiff HUGO ZALDANA |
| 7 | | |
| 8 | DATED: July 2, 2010 | K & L GATES LLP |
| 9 | | |
| 10 | | By: /S/ Matthew G. Ball<br>    Matthew G. Ball<br>    Attorneys for Defendant KB HOME |
| 11 | | |
| 12 | DATED: July 2, 2010 | BRYAN CAVE LLP |
| 13 | | |
| 14 | | By: /S/ Jennifer A. Jackson<br>    Jennifer A. Jackson |
| 15 | | Attorneys for Defendants COUNTRYWIDE FINANCIAL CORPORATION; |
| 16 | | COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE MORTGAGE VENTURES, |
| 17 | | L.L.C.; and COUNTRYWIDE KB HOME LOANS, a Series of COUNTRYWIDE |
| 18 | | MORTGAGE VENTURES L.L.C. |
| 19 | | |
| 20 | DATED: July 2, 2010 | ALLEN MATKINS LLP |
| 21 | | |
| 22 | | By: /S/ Marshall C. Wallace<br>    Marshall C. Wallace |
| 23 | | Attorneys for Defendants FIRST AMERICAN CORP et al |

ECF CERTIFICATION:  I, Peter Fredman, the filer of this ECF Document, hereby certify that the concurrence to this stipulation has been obtained by the above ECF registrants on behalf of their respective clients in this case.  /s/ Peter Fredman

JOINT FURTHER CASE MANAGEMENT STATEMENT         - 14 -
NO. 08-cv-3399 MMC

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 21 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DENISE P. EDWARDS, individually and on behalf of all others similarly situated,<br><br>Plaintiff - Appellant,<br><br>v.<br><br>THE FIRST AMERICAN CORPORATION; FIRST AMERICAN TITLE INSURANCE COMPANY,<br><br>Defendants - Appellees. | Nos. 08-56536<br>      08-56538<br><br>D.C. No. CV-07-03796-SJO-FFM<br><br>MEMORANDUM[*] |

Appeals from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted February 4, 2010
Pasadena, California

Before: B. FLETCHER, PREGERSON, and GRABER, Circuit Judges.

Plaintiff Denise P. Edwards appeals with respect to the denials of her two motions for class certification and her motion for nationwide discovery in her suit against Defendants The First American Corporation and its wholly owned

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Joint Further Case Management Conference Statement
Zaldana v KB Home, Case No. 08-cv-3399 MMC
EXhibit A

subsidiary, First American Title Insurance Company (collectively, "Defendants"). The complaint alleged a national scheme by which Defendants paid millions of dollars to individual title companies and received written exclusive referral agreements in return. In an opinion filed this date, we addressed Defendants' motion to dismiss. Here, we address Plaintiff's appeal.

We review for abuse of discretion the district court's determination of class certification. <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 953 (9th Cir. 2003). We also review for abuse of discretion whether or not discovery is permitted in a class action. <u>Kamm v. Cal. City Dev. Co.</u>, 509 F.2d 205, 210 (9th Cir. 1975).

1. The district court did not abuse its discretion in denying the nationwide class. The party seeking certification bears the burden of showing that each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one requirement of Rule 23(b) have been met. <u>Zinser v. Accufix Research Inst., Inc.</u>, 253 F.3d 1180, 1186 (9th Cir.), <u>amended by</u> 273 F.3d 1266 (9th Cir. 2001). Plaintiff failed to meet that burden on the present record.

2. The district court abused its discretion in denying nationwide discovery. Plaintiff must be given "an opportunity to present evidence as to whether a class action [is] maintainable," and such an opportunity requires "enough discovery to obtain the material." <u>Doninger v. Pac. Nw. Bell, Inc.</u> 564 F.2d 1304, 1313 (9th

Cir. 1977). We hold that Plaintiff should be allowed to conduct nationwide discovery and, following that discovery, Plaintiff may renew her motion for certification of a nationwide class.

3. The district court abused its discretion in denying the Tower City (Ohio) class. With respect to liability, there is a single, overwhelming common question of fact: whether the arrangement between Tower City and First American violated the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2607 ("RESPA"). The district court erred when it held that individualized issues predominated because individualized proof would be necessary to determine whether Tower City had referred each class member to First American Title, who was in the class, and what damages each class member suffered. The second two factors clearly do not defeat class certification; every class action requires identification of class members, and most require individual proof of loss. See Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1094 (9th Cir. 2010) ("[T]he amount of damages is invariably an individual question and does not defeat class action treatment." (internal quotation marks omitted)).

To show that a "referral" was made by Tower City would not require a great amount of individualized proof. A "referral" is "any oral or written action directed to a person which has the effect of affirmatively influencing the selection by any

person of a provider of" title insurance. 24 C.F.R. 3500.14(f). Plaintiffs contend that Tower City was contractually obligated to refer customers to First American Title, which, if true, would be common proof of the "action" element of a referral.

The reliance or causation element requires a more individualized determination, but when misrepresentations are made to a class of similarly situated individuals, the requirement that the Plaintiff prove reliance or causation will not, by itself, defeat class certification. See Fed. R. Civ. P. 23(b)(3) advisory committee's note ("[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action . . . [unless] there [is] material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed."). Evidence submitted by Plaintiff demonstrates that title agents, in this case Tower City, rather than purchasers, choose which title insurance underwriter to use. Indeed, RESPA was motivated by the fact that "reverse competition" is widespread in the title insurance market. In support of their contention that title agents do not always pick the title insurance underwriter, Defendants point to an affidavit stating that, "[f]rom time to time," banks and other lenders involved in a real estate purchase, not the title agent, pick the title insurance underwriter. This statement is plainly insufficient to show that class members are not similarly situated.

Because individualized questions of law and fact do not predominate, the district court's denial of Plaintiff's motion to certify the Tower City class was an abuse of discretion.

AFFIRMED in part; REVERSED in part and REMANDED. The parties shall bear their own costs on appeal.